CITY OF GREENVILLE *v.* MIDDLETON.

[86 South. 804, No. 21486.]

1. MUNICIPAL CORPORATIONS. *Constructive notice of defect in street attributable to city question of fact.*

Whether constructive notice of a defect in a street shall be attributed to municipal authorities is ordinarily a question for the jury to determine from the length of time the defect has existed, the nature or character thereof, the publicity of the place where it exists, the amount of travel over the street, and any other facts or circumstances in evidence which tend to show notoriety, and from which they may conclude that by the ex-

ercise of ordinary and reasonable care and diligence the defect should have been discovered by the corporate authorities.

2. DAMAGES. $5,000 *held not excessive for injury to lifelong cripple.* Evidence examined, and $5,000 adjudged not to be excessive recovery.

APPEAL from circuit court of Washington county.

HON. H. H. ELMORE, Judge.

Action by J. T. Middleton against the City of Greenville. Judgment for plaintiff, and defendant appeals. Affirmed.

*Humphreys & Anderson,* for appellant.

The appellant contends that the court erred in refusing the peremptory instruction for the defendant because the evidence failed to show any negligence in the city of Greenville.

And further, that the verdict is contrary to the evidence. And, even if the appellant was negligent, that the amount of the verdict is grossly in excess of the damages sustained by the appellee. McQuillin on Municipal Corporations, par. 2724.

There being no actual notice, constructive notice imputed knowledge of the defective condition of the street, in this case the broken bridge before the accident must be shown, and time after such notice to put the street in a reasonably safe condition, in this case, time to repair the bridge. Of course, that time after the notice must be a reasonable time.

Since the lapse of time from the origin of the defect in the street to the time of the accident is the principal element of constructive notice, the court will observe that two periods of reasonable time must pass between the origin of the defect, the braking of the bridge on Thursday afternoon, and the time of the accident, and the stumbling of the pony on the following Monday night, four days later, before the appellant can be held liable. First, sufficient time must have elapsed from the breaking of the

bridge to the time of the accident to show that ignorance of the broken bridge on the part of the city is not compatiable with reason except on the assumption of failure to exercise reasonable care. Second, after the passing of that time, the attaching of the knowledge of defect, another period of reasonable time must pass during which the city may repair the defect.

In determining what is a reasonable time before knowledge of the defect can be imputed to the city and after the imputation of that knowledge, time within which the city may repair the defect, the court should consider the locality of the street with reference to the traffic that goes attendant upon it. Of course knowledge would and should be imputed to the city in a much shorter time if a defect of this nature existed upon one of the main thoroughfares of the city than where, as in this case, it was off on a side street, far from the business center of the town, and seldom used for traffic. *Kunz* v. *City of Troy (N. Y.)*, Reported in 10 N. E. 442; *Vicksburg* v. *Hennessy,* 54 Miss. 392; *Nesbitt* v. *Greenville,* 69 Miss. 22; *Cohea* v. *Coffeeville,* 69 Miss. 561 *Butler* v. *Oxford,* 69 Miss. 618; *Walker* v. *Vicksburg,* 71 Miss. 899, 15 So. 132; *Town of Union* v. *Heflin,* 104 Miss. 659, 61 So. 652; *Whitfield* v. *Meridian,* 66 Miss. 570; *Natchez* v. *Lewis,* 43 So. 471; *Saxon* v. *Houlka,* 65 So. 124; *Meridian* v. *Crook,* 69 So. 182; *Higginbottom* v. *Village of Burnsville,* 74 So. 133; *Jackson* v. *Carper,* 35 So. 157; *Greenwood* v. *Harris,* 42 So. 538; *Birdsong* v. *Mendenhall,* 52 So. 795; *City of Pascagoula* v. *Kirkwood,* 38 So. 547; *Stainback* v. *Meridian; Pomes* v. *McComb City,* 83 So. 636; *City of Hazelhurst* v. *Shows,* 74 So. 122; *Parson* v. *Manchester,* 27 Atl. 88; *Cutter* v. *Demoines,* 113 N. W. 1080; *Monticello* v. *Kenard,* (Ind.) 34 N. E. 454; *Naylor* v. *Mountain Stone Co. and Salt Lake City,* 35 Pac. 509; *Ft. Wayne* v. *Duryee,* 37 N. E. 299; *Palestine* v. *Hassel,* (Texas), 40 S. W. 147; *Brennan* v. *New York,* 114 N. Y. S. 578, 130 App. Div. 267; *Corey* v. *Ann Arbor,* 134 Mich. 376, 96 N. W. 477.

It seems to us that a verdict of five thousand dollars even if the appellant were negligent, is grossly excessive. We do not care to burden the court with an argument on the contention that the verdict is contrary to the evidence. The record speaks for itself.

We submit the case upon the authorities quoted and upon the record.

*Percy Bell,* for appellee.

The questions of law in this case are really two in number, first, whether the cause should have been submitted to the jury on the question of whether or not sufficient time had elapsed between the breaking of the bridge and the accident to constitute constructive notice; and, second, whether the verdict is excessive. We shall consider these in this order.

Should the case have been submitted to the jury? We submit that the court below did the right and proper thing in submitting the case to the jury on the question of constructive notice as well as the amount of damage. Our own state has announced and generally accepted the rule that each case of constructive notice must stand upon its own facts and circumstances and is a matter addressing itself almost entirely to the discretion of the trial judge and except in cases where it was manifestly unjust or absurd to impute knowledge because of the shortness of time, the courts have upheld the submission of constructive notice to the jury as a fact for the jury to decide. The authorities are almost uniform in holding that it is a question of fact for the jury and we submit that in the few cases where the court held that the cases should not have been submitted to the jury, that it was manifestly absurd or unjust to so submit them.

Surely no one can contend in the instant case that a period of four days was not sufficient time for knowledge of the defect, during all of which time this bridge was broken in a thickly populated part of Greenville, one block from the leading school and leading negro thorough-

fare (Nelson street) and on another leading thorough-
fare (Theobald street) and during which time on the
Sunday preceding this accident there had been another
accident, the witness, W⟨i⟩. W. Lindsay, having had a sim-
ilar accident, from which he fortunately escaped without
injury, especially when we take into consideration the
fact that the city of Greenville employed a street super-
visor and in addition thereto, a man whose business it was
to look after the wooden bridges similar to this in the
city. Surely four days was sufficient time for this man
to have discovered this broken bridge and to have repaired
it or stuck a flag in it warning of the danger, and the jury,
we submit, was entirely right in finding that the city had
had sufficient time to constitute constructive notice.

Many of the cases cited by counsel for appellant in his
brief are not in point, either by reason of there being no
question of constructive notice, of the defects being latent,
or located outside the traveled roadway, or there being
other agents, as on account of someone letting a hydrant
run and thereby producing freezing water on the pavement,
but we submit that no case and authority cited by the
appellant is sufficient to show that the trial judge erred in
submitting this case to the jury.

In the case of *Butler* v. *Oxford,* the defect existed for
only two hours. In the case of *Town of Union* v. *Heflin,*
the defect existed for less than a day. Counsel relies very
largely upon the case of *City of Hazelhurst* v. *Shows,* 74
So. 122. In this case the obstruction was entirely off the
roadway, was certainly not there by reason of any neg-
lect of the city, and the person injured had been over the
road many times. In the instant case the defect was a
part of the roadway and Mr. Middleton had not been over
the road before. Record page 19.

We have no quarrel with the authorities quoted by coun-
sel from other states because they are all in line with the
rule announced by McQuillin and stated at the beginning
of this brief; each case stands on its own facts. We will,
however, pause to notice the case of *Corey* v. *Ann Arbor,*
134 Mich. 376, as in this case the injury was caused by

a deposit of ice upon the sidewalk, the water which froze flowing from the hydrant of the adjacent owner, a very different matter from the case at bar.    McQuillan on Municipal Corporations, volume 6; 28 Cyc., page 1388 et seq., 28 Cyc., page 1507; *Cutler* v. *Desmoines,* 113 N. W. 1081; *Parsons* v. *Manchester,* 27 Atlantic, 88; *King* v. *The City of Troy,* 10 N. E. 442; *Town of Monticello* v. *Kenard,* 34 N. E. 454; *City of Fort Wayne* v. *Dorgle,* 37 N. E. 299.; *Harriman* v. *City of Boston,* 114 Mass. 241; *City of Decatur* v. *Besten,* 48 N. E. 186.

Our own court has held in the case of *Whitfield* v. *City of Meridian* as follows, 6 So. 244: "It was the duty of the city to know within a reasonable time of obstructions placed in the streets by others, and to cause the same to be removed.    It is not incumbent upon one who has sustained damage to prove that the city had actual notice of the defect by which the injury was caused.    Negligent ignorance is no less a breach of duty than willful neglect.    The circumstances of each case must determine whether existence of the defect is to be attributed to the corporate authorities.    *Naylor* v. *Mountain Stone Company,* 35 Pac. 509; *Higginbottom* v. *Village of Burnsville,* 74 So. 133, 20 L. R. A. 708.

Was the judgment excessive?    We shall occupy but little of the court's attention on this subject.    The instructions of both parties present this case clearly and fairly. Plaintiff's instruction No. 4 stated that the jury could consider the actual damage sustained by plaintiff and his pain and suffering.    No punitive damage was asked or given.

Defendant's instruction No. 7 stated that the plaintiff could recover only for such injuries as were natural and proximate result of the accident and there was certainly nothing in the argument to inflame the jury, especial care being taken by the counsel for plaintiff to urge that all that should or could be given was compensatory damages. The jury evidently believed that five thousand dollars or one-half of the amount sued for was proper compensation for months and years of constant suffering and for injury

of the plaintiff. No member of that jury would have been willing to undergo what this boy underwent for five thousand dollars, nor do I think any member of this court would be willing to do so.

Certainly it was a question for the jury to decide. The sum which they fixed was much less than that asked in the declaration and there is nowhere the slightest hint or suggestion that there was any appeal to their passions or prejudices or that the trial was anything but an orderly presentation of facts upon which the jury might decide.

We submit that there is absolutely nothing in the position that the verdict was excessive.

W. H. COOK, delivered the opinion of the court.

The plaintiff, appellee here, sued the city of Greenville for damages for personal injuries alleged to have been sustained by reason of a defective bridge across one of the streets of the city, and from a judgment in favor of appellee for five thousand dollars the city prosecutes this appeal.

In August, 1917, plaintiff, a lifelong cripple, was the agent in the city of Greenville for one of the Memphis newspapers. These papers reached Greenville shortly before ten o'clock p. m., and plaintiff delivered them to the various subscribers at night. For this purpose he rode in a small two-wheeled cart drawn by a pony, and, while driving along Gloster street within the corporation limits of the city, he attempted to cross a bridge which was at the intersection of Gloster and Theobold streets. There was a hole in this bridge caused by a broken plank, and plaintiff's horse stepped into this hole and fell, and plaintiff was thrown from the cart onto the ground and injured. This accident occurred on Monday night, and the bridge had been broken on the preceding Thursday afternoon. On Sunday afternoon a horse driven by W. W. Lindsey, a witness for plaintiff, also fell into this same hole. Gloster street runs into Theobold street at right angles, and the broken bridge was across Gloster street at the

point where Theobold and Gloster streets intersect and on the east margin of Theobold street. Theobold street is one of the main thoroughfares of the city and is very much traveled. Gloster street is not a main thoroughfare, and there is not so much travel thereon, but it is in a thickly populated negro settlement.

This appeal presents for determination two questions: First, whether a peremptory instruction for defendant should have been granted; and, second, whether the verdict is excessive.

There is no contention in this case that the city authorities had actual notice of the defective condition of the bridge, but the case was submitted to the jury upon the question of whether the facts and circumstances in evidence were sufficient to attribute to the municipality constructive notice of the defect. It is undoubtedly true that, if the evidence in any case is insufficient to support a finding that the municipality is charged with constructive notice of a defect in the streets, a peremptory instruction for the municipality upon the question of liability is proper. But the general rule is well established that the facts and circumstances of each case must determine whether constructive notice of the defect is to be attributed to the municipal authorities, and ordinarily this is a question for the jury. There are many elements which may properly be considered by the jury in passing upon this question. No definite rule as to the length of time a defect must have existed to furnish notice to the municipal authorities can be fixed by the court, and whether notice shall be imputed to the city authorities is ordinarily a question for the jury to determine from the length of time the defect has existed, the nature or character thereof, the publicity of the place where it exists, the amount of travel over the street, and any other facts or circumstances in evidence which tend to show notoriety, and from which they may conclude that by the exercise of ordinary and reasonable care and diligence the defect should have been discovered by the corporate authorities. *Whitfield* v. *City of Meridian*, 66 Miss. 570, 6 So. 244, 4 L. R. A., 834, 14

Am. St. Rep. 596; 28 Cyc. 1388, 1507; McQuillan on Municipal Corporations, vol. 6, sections 2813 and 2814; *Bailey* v. *Winston,* 157 N. C. 252, 72 S. E. 916; *Harriman* v. *City of Boston,* 114 Mass, 241, 48 N. E. 186; *Naylor* v. *Salt Lake City,* 9 Utah, 491, 35 Pac. 509; note 20 L. R. A. (N. S.) 513.

This case was submitted to the jury under instructions which correctly announced the law upon the question of constructive notice and liability, and we cannot say that the testimony was insufficient to warrant the finding of the jury.

Finally, it is insisted that the verdict is excessive. It is peculiarly the province of the jury to measure the compensation due for the pain and suffering endured by plaintiff, and this question was submitted to the jury under proper instructions. The record does not disclose anything which would indicate that the jury was influenced by passion, prejudice, or corruption, and after a careful examination of the testimony we are unwilling to say that the verdict of the jury is excessive.

We find no error in the instructions granted the plaintiff, and the principles announced in the instructions refused defendant were fully covered by those which were granted, and therefore this cause is affirmed.

*Affirmed.*