CITY OF MERIDIAN *v.* KING.

(Division B. Dec. 21, 1942. Suggestion of Error Overruled Feb. 15, 1943.)

[11 So. (2d) 205. No. 35186.]

(Division B. Feb. 15, 1943.)

[11 So. (2d) 830. No. 35186.]

Robert R. Wallace and Jacobson, Snow & Covington, all of Meridian, for appellant.

**Reily & Parker** and **Williamson & Riddell,** all of Meridian, for appellee.

170

Argued orally by **E. L. Snow**, for appellant, and by **Nate S. Williamson**, for appellee.

**Anderson, P. J.**, delivered the opinion of the court.

Appellee King brought this action in the circuit court of Lauderdale county against appellant City of Meridian to recover damages for an injury he received while driving his automobile in the nighttime at the intersection of Seventeenth Avenue and Front Street, two much traveled thoroughfares of the city. He recovered a judgment in the sum of $2,500, from which the city prosecutes this appeal.

The principal ground relied on for reversal is that the court erred in refusing the city's request for a directed verdict. The giving of two of the instructions granted the plaintiff is also assigned and argued as error.

Between 11 and 12 o'clock at night the plaintiff was driving his automobile east on Front Street and at its

intersection with Seventeenth Avenue he ran into a street barricade and was injured. Recovery was sought on two grounds, (1) that the intersection was so constructed and maintained by the city as to be dangerous to the traveling public, and (2) whether properly constructed or not it was a dangerous intersection and the city was due to post one or more adequate warnings of the danger by a red light or otherwise. There was no evidence tending to show that the construction of the crossing itself was dangerous to the traveling public. The issue of fact made by the evidence was whether or not it should have been and was properly guarded by a red light or otherwise to prevent collision with the barricade on the east side of Seventeenth Avenue, hereinafter described. Seventeenth Avenue runs north and south, and Front Street east and west. West of the intersection Front Street is 54 feet and 3 inches wide, while east of the intersection it is 30 feet and 4 inches wide. This difference was caused by a right angle cutdown of 23 feet and 11 inches in Front Street on the east side of the intersection and on the south side of Front Street. Along this 23 feet and 11 inches there was erected a concrete barricade wall 3 feet and 4 inches high, and against this wall on the west was a dirt embankment about 1½ feet high, leaving the concrete wall exposed to view about 1 foot and 10 inches above the dirt wall. The result was that the travel going east on Front Street would be facing directly the east side of the wall.

Front Street at the crossing and for some distance east and west is straight.

The only witness to the accident was the plaintiff himself. He testified that there was no red light or other warning of any kind of the approach to the intersection; that when he got within about 75 or 100 feet of the intersection there appeared an automobile meeting him about the same distance east of the intersection; that its lights shown so brightly in his face that he was unable to see the barricade or anything else ahead of him; that he did

not know of the existence of the barricade; that he reduced his speed to something like 15 or 20 miles an hour, but nevertheless he ran into and over the barricade and down into a ditch on the east side, causing his injury. That the next day he saw a light some distance to the north side of the intersection, but if it was burning on the night of his injury he did not and could not see it.

We are of the opinion that it was a question for the jury whether or not in the exercise of reasonable care for the safety of the traveling public the city was due to give adequate warning to those traveling east on Front Street that they were approaching the barricade.

The evidence tended to show that the plaintiff himself was negligent in approaching the crossing, that in the exercise of reasonable care for his own safety he should have stopped his car when he was blinded by the lights of the approaching car. At the request of the defendant the court gave a comparative negligence instruction.

One of the instructions is criticized on the ground that it fails to define "negligence." It is true that the instruction gave no definition of "negligence," nevertheless it did inform the jury that "negligence" was defined in the other instructions. We are of opinion that that is true. All instructions are read together as one. It is not necessary that each one shall be complete within itself, but that all together shall be complete. That is true of the instructions in this case. The criticism of the other instruction given for the plaintiff is so devoid of merit as not to call for a ruling by the court.

Affirmed.

## On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

A judgment for plaintiff was affirmed at a former day of this term. The defendant complains upon suggestion of error that the law has been settled in this state by

numerous decisions which it is contended are, in effect, overruled by our opinion. These cases include City of Meridian v. Crook, 109 Miss. 700, 69 So. 182, L. R. A. 1916A, 482; McComb City v. Hayman, 124 Miss. 525, 87 So. 11; Higginbottom v. Burnsville, 113 Miss. 219, 74 So. 133; City of Natchez v. Cranfield, 155 Miss. 540, 124 So. 656; Thomas v. City of Lexington, 168 Miss. 107, 150 So. 816; Dow v. Town of D'Lo, 169 Miss. 240, 152 So. 474; City of Greenville v. Laury, 172 Miss. 118, 159 So. 121; Standard Oil Co. v. Decell, 175 Miss. 251, 166 So. 379; City of Hazlehurst v. Matthews, 180 Miss. 42, 176 So. 384; Warren v. City of Tupelo, 187 Miss. 816, 194 So. 293; Brewer v. Town of Lucedale, 189 Miss. 374, 379, 198 So. 42; Birdsong v. City of Clarksdale, 191 Miss. 532, 3 So. (2d) 827.

An analysis of the foregoing cases should disclose that they expound a principle adherence to which required a conclusion contrary to defendant's contention. The repetition of the statement of reasonable care applicable in similar cases seems not to have been sufficient to guarantee its full comprehension. The standard of care required of a municipality in its construction or maintenance of its streets was carefully restated in City of Greenville v. Laury, 172 Miss. 118, 159 So. 121, as "the duty to exercise ordinary care to keep its streets reasonably safe for use by persons exercising reasonable care and caution."

The contention here made, that since this court found that plaintiff was not himself exercising reasonable care, the city owed him no duty, was made in most of the foregoing cases, and was especially urged in Birdsong v. City of Clarksdale, 191 Miss. 532, 3 So. (2d) 827, 830, and a clarification made of the point, the opinion stating: "The measure of care imposed on the city is defined in terms of an anticipated use and is modified accordingly; but if the city has failed to fulfill this measure of care, and its negligence concurs with or contributes to an in-

jury, the injured person is not barred although he also was guilty of negligence—unless, of course, his negligence was such as to constitute the sole proximate cause." In the instant case the jury were authorized to find, and did find, that plaintiff's negligence was not the sole cause of his injury.

It seems that misapprehension of the rule arises from a tendency to confuse the word "persons" in the definition of the city's initial duty with the "person" who at the moment happens to be a plaintiff. The conduct of such plaintiff is not a proper subject of inquiry unless and until liability of the city has previously been adjudged by an application of the foregoing rule. This rule is an abstract statement of substantive law. The standard of duty is not merely care, it is reasonable care; and more, it is reasonable care to maintain its streets in a reasonably safe condition. But this is not yet sufficiently definite because we must have a standard of reasonable safety. Such definition must be made, and may be found in the Birdsong case, supra, where it is said, "The municipality has the right, therefore, in the construction and maintenance of its streets to act in the light of expectation that the users thereof will look to the physical aspects and the natural condition of things around them." See, also, Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 199 So. 294, 1 So. (2d) 242.

The argument here made is that which was answered in the foregoing cases. It is this: since plaintiff was not using reasonable care the city owed him no duty under the rule set forth. This contention misconceives the rule and its acceptance would reinstate the complete bar of contributory negligence. Cf. dissenting opinion City of Greenville v. Laury, supra. The rule does not mean that the municipality is liable only to those using reasonable care. Its negligence is to be determined by its own conduct, without reference to that of plaintiff, and its liability becomes fixed when such negligence becomes the proximate cause of injury. A plaintiff's conduct is not

a factor in adjudging the initial negligence of the city. He may be using more or less care than the standard required by the rule. If the city is negligent, and injury ensues, it is liable to the injured party, regardless of whether the latter was using reasonable care or not. As to the extent of such liability, the negligence of plaintiff becomes a relevant factor under Code 1930, sec. 511. The city's negligence is not appraised with reference to the particular plaintiff nor the particular accident; it is determined initially with reference solely to the standard of care as defined in the principle. If the city is negligent by its conduct the plaintiff's negligence becomes contributory; if the city is not negligent by the abstract test the injury is due solely to negligence of the plaintiff.

When the statement of the principle is disarranged confusion is invited. Thus it wholly destroys the import of the rule to say, as is here contended, that a municipality owes a duty to those using reasonable care and caution to exercise ordinary care to keep its streets reasonably safe. Another distortion too frequently found is that the city must exercise such care provided the plaintiff uses reasonable caution. The phrase ''persons exercising reasonable care and caution'' modifies, not ''duty,'' but ''safe.'' As stated in the Birdsong case, supra: ''The expression is a brief definition of the duty of the city but does not operate as a deprivation of the right of the citizen. It sets up a standard of conduct for the city under which it may be reasonably absolved, but not a criterion by which the citizen shall be unreasonably barred.''

Suggestion of error overruled.